May it please the court, Darren Quinn for Plaintiffs in Appellate and I request 5 minutes for reply. This appeal concerns plaintiffs claims for removal of copyright management information, CMI for short, in violation of section 1202B-1 regarding removal of CMI and 1202B-3 and B-2 regarding distribution thereafter. On page 17 of appellant's opening brief, we have some photos with a chart that shows before upload photos and after upload photos of plaintiff. These are the photos that were attached to the complaint. I'm going to use props to help show how Corelogic removed the CMI. When the plaintiffs take a picture, this glass will represent it. How do we really understand all of this? And maybe it would be better to get, we understand that there is metadata which is incorporated in the photos of various kinds, some more, some less, that ended up on Corelogic's, on the multi-listings that Corelogic facilitated essentially. The metadata wasn't there except for the ones that were on the outside. I'm repeating what I know so you don't repeat it, okay? And we also understand that there were intermediary people because the photos were given to the real estate people who then posted it on MLS. So what else do we need to know? I didn't hear you say resize to a smaller copy. I'm sorry? We understand also that when you make the photo smaller you will lose the metadata and that there are good reasons to make it smaller. What else? Why don't we get to the issues in the case? Sure, absolutely. So we do have Corelogic's MLS platform and the district court has found that it's clear that Corelogic's platform would have removed CMI metadata if it existed at the time of upload. So this is going to be strong evidence of the removal elements on section 1202B. Now Corelogic chose not to keep the original photo that was uploaded. The what? They didn't keep it because they were no use to them? It matters because it's going to come up, I think, with a legal decision with respect to the Friedman v. Livewire as well as the Adobe v. Christensen case. There comes an issue with respect to initial burden and burden of persuasion. So those cases generally stand for the fact that it's unfair to require a plaintiff to prove a negative. So Corelogic, or the court, wants us to prove that the agents that uploaded the photo did not remove metadata prior to upload. That's a negative. The party in the best position to determine whether or not a photo had metadata at the time of upload is Corelogic, when it made its small, resized copy. So it's... What does that got to do with anything other than whether they reasonably should have known? Because it sure doesn't prove knowledge, right? It proves, it creates a strong inference, if not a presumption, that at the time that the photo was uploaded, that it had metadata. What creates that presumption? What is creating the presumption? Well, the inference or the presumption is, and it's actually several things that's referred to in the opening, but you have photos that are ready to be uploaded that are provided by a plaintiff. They don't have to be modified at all. That's number one. You've got number two, you've got no... So the agents have no reason to modify this at all. Number two, even if they did want to modify it, like reshaping or resizing, plaintiffs have presented evidence, hard evidence, that if they did that, that it wouldn't result in any loss of CMI metadata. Now defendants on the other hand... Your evidence is that Windows Picture Shop doesn't do it. What's your evidence? Your evidence is that the applications they would use for that purpose wouldn't strip the metadata. That's correct. At least one wouldn't. Right, so we showed, plaintiffs showed affirmative evidence of that. The problem is that there's this huge... I mean, I don't completely discount what you're saying. The problem is you do have this third party in the middle of all this and you just don't have anything from that third party or any of them. That's the weird part. You just didn't get any real estate agents here to say, oh, we didn't do that. Not one. But plaintiff wouldn't need to resort to contacting agents if CoreLogic had maintained a copy of the original upload with CMI. Are you making a disparilation argument or what? Well, I think it's two things. One, defendant's expert has said that they don't normally keep the original uploaded file because of size unless they may need it later. Unless they what, I'm sorry? Unless they may need it later. This is in defendant's opposition at page 19. For their functional purposes, they say we don't need them. Right. But now it's later. We need it. But they're looking at what they need to run their business, not what they need to satisfy the court. But CoreLogic and only CoreLogic made the conscious choice to go from this size to this size. It didn't have to. It did it for its own purposes. That's a question. Was it actually CoreLogic or is your claim really that CoreLogic would have known it? But my understanding is that the software that was used was not their software. No, it is CoreLogic software. What the court needs to understand is this, is CoreLogic, they decide exactly what's in their software. So they make reference to a third-party library. But CoreLogic has a choice of which third-party library to use. They can choose a third-party library that preserves metadata or they can choose a third-party library that does not. They chose one that does not. Okay, but it wasn't their – they didn't create the application that stripped the metadata. They created the application that used the third-party library that stripped the metadata. It was their choice, correct. Does that make sense? Is there evidence that insofar as this shrinking occurred that it was CoreLogic that did it automatically by virtue of the software or did somebody do it? I mean, how did that happen? Or when the real estate agents uploaded, did it automatically happen? So you have the – You put those things down. They're really not helping me. Sorry. Go ahead. I apologize. They helped me, so that's my comfort. CoreLogic needs the file and wants the file as small as possible. So when it's creating its software and telling its software exactly what to do – That's a third-party library. They didn't do that? No, it's just a tool, a frame, so to speak. I'm sorry? It's a – you have – think of it as a subset. So if this entire podium is the software and then you have one subroutine, so to speak, that deals with image processing, CoreLogic had the choice to use this in image processing that would preserve metadata. Okay. Or it could have used a different one. All right. It did, but it took it out. What I'm asking you is, did anybody – did any person or choice made by CoreLogic other than choosing the software or the library result in the shrinkage of the pictures which apparently stripped the metadata? That would be the choice. And the choice – It was just by what – which software they chose. Yes. CoreLogic made the choice, not the agent. Correct. Okay. But CoreLogic didn't create this thing. It just made a choice. Well, it did. If you're making – What does the statute say about what you have to do in order to violate it? Well, with respect to B1, plaintiffs have the obligation to show intentionally removed. That's with respect to removing metadata. With respect to B2 and B3, that's distribution of copies after metadata has been removed. There's no statutory requirement that the removal of metadata be intentional. So what we have is this, is at the time of the lawsuit, we certainly have the inference that CoreLogic knew that metadata had been removed. But the day after the lawsuit was filed, we showed that CoreLogic absolutely knew that its software was removing metadata. So at that point, CoreLogic continues to distribute its photos without the CMI metadata. So it is absolutely – with full knowledge, it is distributing those photos without metadata. And even worse, one of the places it is distributing them is through its partner InfraNet program, which we allege is an infringing use that will absolutely establish the requirement of CoreLogic knowing or having reasonable grounds to know that it will induce or enable or facilitate or conceal an infringement. Certainly it will conceal because they've ripped out – they've identified information. That's a question about what this last phrase of the statute means. Knowing or with respect to – having reasonable grounds to know that it will induce, enable, facilitate, or conceal an infringement. It doesn't have to be any particular infringement that might induce, enable, facilitate, or conceal. I mean, how are you getting away from the fact that anybody who does these things knowingly will have satisfied the second part of the statute about knowing that there would induce, enable, facilitate? What do you have to show to show that? I'm going to start out what we don't have to show. We don't have to show an infringement. I know that. Okay. So then what we need to show is using the ordinary dictionary definitions of induce, enable, facilitate, or conceal. Is it simply that somebody – there might be somebody out there who might show up and might want to infringe and so on. There doesn't have to be any likelihood of it happening or anybody who – I mean, these are photographs that presumably nobody wants particularly. They're not artistic. They're not attractive. They're just some pictures of some houses. So the question is what do you have to show to show that it's going to meet the standard? If you have to show anything, then the standard means nothing because it will always be met. Well, the fact – and there's case law that we cited that says when you take out the CMI that it does induce, enable, facilitate, or conceal. So therefore, it's just useless language. No. I wouldn't say that. So what's it good for? Well, I think in this particular case, we have shown that it actually did result in copyright infringement by CoreLogic. But it does talk about – because it says will infringe, so it talks about – Why did it result in copyright infringement? Say that again. Tell me why it resulted in copyright infringement. Partner Infinite Program. Okay. That's the program that is for non-MLS purposes, for risk management purposes, such as banks and insurance companies. That's the one, if you look in the briefs, we talk about the indemnity provision and the separate agreement that CoreLogic had to get. They presumably thought they had authority, and if all the metadata was there, they wouldn't have done it? Of course they would have because they thought they were authorized. I don't think that's accurate. I think that because they thought that no one would care about this and they stripped out the CMI metadata, they thought they wouldn't get caught and couldn't get caught. We caught them, and now it's $13 million in revenues. I'm a little bit confused. What evidence do you have that CoreLogic's development of software to create and resize images actually was done in a manner that removed metadata and that was done intentionally? That's what your B1 claim is, isn't it? Yes, the B1 is intentional removal. That's correct. Court held you didn't have any evidence on that score, and I'm curious what evidence you have on B1 that would get you past summary judgment. Okay. That's set forth in our opening, but that's going to include that the photographs with CMI were made MLS upload ready. Nothing had to happen, so there's no reason why an agent would remove it. Two, even if an agent did want to rotate or resize a photo, we have shown evidence that it's not going to result in a loss. All right. Your time is up. I'll give you two minutes for rebuttal. Thank you. Thank you. Good morning, Your Honors, and may it please the Court, Daryl and Dury from Dury-Tongari, appearing for CoreLogic. I'd like to begin with the question that was just being discussed with respect to the statutory requirements relating to the requirement that the active removal must be done knowing that it will induce, enable, facilitate, or conceal an infringement. Both Kelly v. Arribasoft and Gordon, which is the Sixth Circuit case, make clear that is an issue appropriate to be resolved on summary judgment when there is no evidence, that there is a reason to think the removal of the copyright management information will result or increase the likelihood of copyright infringement, and there was no such evidence in this case. In fact, both of the individual plaintiffs conceded that they didn't use copyright management information in the form of electronic metadata in order to police potential infringement. Well, the representation was just made that this secondary distribution system may have been facilitated by the absence of metadata. I don't remember that being in the complaint as such. There is no evidence of that. There is evidence that CoreLogic entered into agreements with MLSs and paid them in order to be able to use their data for this service. In other words, it was authorized. And received absolutely authorization from the MLS to do that. There's nothing in the record that would connect the functioning of the third-party software that CoreLogic incorporated into its software that happened to remove metadata as part of the resizing operation to its agreements with the MLSs for the Partner InfoNet program. In terms of what you just said, I just want to clarify one point because Judge Payne asked the question. One thing that I do understand to be agreed upon is that the resizing did strip the metadata. If there was metadata. If there was metadata. That is correct. If there was metadata there, the operation of this third-party software would result in that metadata being removed because the purpose of the resizing operation is to make the file smaller. Well, so just to go stepwise, I mean in logical steps, the Friedman case, which I wrote and forgot about and went and reread, does recognize the possibility of a sort of constructive proof of this kind of fact. I understand that there's a third-party in the middle here, but it seems exceedingly unlikely. And there's a gap in the summary judgment record. No doubt that nobody on either side went to any of the real estate people and said, did you strip any metadata? Or even more generally, what was the process, the technological process you used to do the uploading? That's not in the record by either side. Is that right? That is correct, Your Honor. But it does seem pretty likely that it wasn't the real estate people who were resizing. Do we have any reason to think they were? So two things, Your Honor. First, the real estate agents are the ones who make the decision to upload a photograph to the system. They are the ones who secure the necessary permissions to do that. They're the ones who pick the photograph. They may also choose to upload the photograph to Facebook or Instagram, and there's testimony in the record that if you did that, it would remove any metadata that was present. They are the ones who have commissioned the photos and are selecting and manipulating the photos in order best to sell the house. And if this all leads to an argument that they're not the person who did anything, you're not, that's an argument I can understand. But that's a different argument from saying that even if there isn't a pretty fair inference that it was the CoreLogic system that was doing this. Two points. One, I am making the argument that we are not the relevant actor for assessing liability. Even if the metadata was on there when it was uploaded. Correct. That I can understand. But secondarily, it's not just how the resizing took place. Was there metadata in the form of copyright management information on there in the first place? Testimony in the record is the plaintiffs do not always include electronic, digital copyright management information. Some of their photos had it on, some of them didn't. And in fact, one of the plaintiffs himself had a website that used the same software library that stripped the metadata from the photos that were available from his own website. So was there metadata at all? Did that metadata include copyright management information? If there was metadata and it included copyright management information, did the agent then manipulate the photo or upload it to a social media platform in a way that would have removed that metadata before it ever arrived at CoreLogic Software? How, as a practical matter, was the plaintiff in this situation supposed to prove that? The plaintiff would need to go take testimony from a real estate agent who actually performed the act of upload and get a copy of the photograph, his or her photograph, as it existed at that point in time. The plaintiffs made a tactical decision not to seek that testimony from the agents because the agents were the ones to whom they had given these permissions, and the agents were the ones who commissioned these photographs for the express purpose of using them to sell houses, which would include uploading them to an MLS. And in fact, the plaintiffs conceded that they understood that the agents were going to be uploading these photos to MLSs. And they also testified that they understood the agents had the right to make modifications to their photographs and had the right to print those photographs in hard copy form, for example, on a flyer, in a way that would also not preserve electronic metadata information. The plaintiffs also conceded that they had the ability to and sometimes did use visible watermarks on their photographs, which would be a way that they could include copyright management information that would not get stripped off. But in the case of Mr. Vandal, he testified sometimes he didn't do that because he didn't want his name associated with the photograph because it was a photograph of, for example, a not very attractive property, and it was less important to him to be able to track whether there was copyright infringement of that work than it was to make sure nobody could associate the photo with him. Well, then he wouldn't have to do that, so it's not fair. Then he'd have hidden a way to track it if he wanted to. But the whole premise of Plaintiff's Counsel's argument, which incidentally is sort of disconnected from what the individual plaintiffs did and understood at the time, but the premise of Plaintiff's Counsel's argument is this metadata can be seen and accessed and used to track instances of infringement. But Mr. Vandal said not only did he not use copyright metadata in that fashion because he didn't even realize that was an option available to him, he was affirmatively trying to disassociate his name from these photographs because he didn't care about infringement, but he did care about the reputational harm from having those photographs associated with him. What do you understand the claim to be as to what your client did wrong in violating each subsection, 2B1, 1202B1, 1202B2, and 120B3? Thank you, Your Honor. With respect to 1202B1, the claim is that my client provided software, the operation of which could have removed copyright management information in the form of metadata if that information existed. The core problem with that claim, and there are many, is that providing software that removes metadata is not inherently a violation of 1202. There are perfectly appropriate uses for such software. It is only a violation of 1202 to use that software in order intentionally to remove copyright management information in order to facilitate infringement. And what evidence was there about the intent of CoreLogic to remove software to that end? One, there was no evidence that CoreLogic intended to remove copyright management information. They used this third-party resizing library that's commonly used and incorporated that in their software. Two, in addition to the text of the statute, the legislative history makes clear that 1202 is not intended to apply to entities that provide software or services because it has all of these specific intent requirements. Contrasted with 1201, which does have a specific provision that applies to entities that provide instrumentalities that can be used. 1202 doesn't apply to CoreLogic at all because we are providing software at most and a service. We are not making decisions about uploading particular photographs. CoreLogic is not in a position to determine whether the appropriate permissions were obtained by the real estate agent. Only the real estate agent can do that. And CoreLogic is not in a position to make an individualized judgment about whether there is some risk of an increased likelihood of copyright infringement as a function of the automatic operation of this software. What is your understanding, and this is really a continuation of Judge Payne's question, of the last part of the statute, knowing or with respect to civil remedies, having reasonable grants to know that it will induce, enable, facilitate, or conceal infringement. What has to be shown to demonstrate that? I think, Your Honor, it has to be that the removal of copyright management information or distributing photos from which that information had been removed, that the absence of copyright management information will induce, enable, facilitate, or conceal infringement. Well, but the problem is that the theory of the statute is that it always will. I mean, that's why they have the requirement. And yet, if you say that, you're reading the language out. So if you can give us some stage or a test that you would use. I disagree that the statute presumes that copyright management information or its availability or lack of availability always will be relevant. And I think that's the point of Gordon, the Sixth Circuit case. Give me an example or a sentence that tells us when it will be relevant. So in this case, digital copyright management information in the form of metadata is not relevant to infringement based on the evidence of record because there was no testimony that any real estate photographer uses digital metadata in order to police infringement. Well, why does that matter? Because if the metadata... The question isn't whether the creator of the work is using it. The question is whether it will, what's the phrase, induce, enable, facilitate, or conceal an infringement. There's no evidence in the record that anyone looks to digital metadata associated with real estate photos on MLSs for any purpose. So there's no evidence that it's going to make any difference as to whether an infringement happens. And in fact, the evidence in the record from plaintiffs was that in the rare instances where they had been concerned about an act of infringement, they learned about it by seeing their photograph being used to promote the sale of another house. They called the agent and they asked their agent to tell the other agent to stop doing it. No copyright management information and no metadata played any role in any part of that process. So there's simply no evidence that on the facts of this case that whether or not that digital metadata is there is going to make any difference to whether copyright infringement happens or doesn't happen. What is your understanding of the significance of your opponent's argument that the day after the suit was filed, you knew what was going on and yet you didn't do anything? What's the significance of that with respect to the case? So first, Your Honor, the first requirement is that it must take place without the authority of the copyright owner. We receive representations from the agents that they have obtained that authority. Again, there's nothing inherently wrong with removing metadata. It's only a problem to the extent that we are presented with a photograph that has metadata, has copyright management information specifically where the agent did not manipulate the photograph to remove it and failed to secure the permissions that they represent to us. That authority is not in one, it's only in two and three. So some of those requirements, the intentionally remove is only in one, but two and three require that we know that copyright management information was removed without the authority of the copyright owner. And there still must be this requirement that it induce, enable, etc., copyright information. And there's also sort of a very statutory interpretation problem here about who is the burden and who is the authority. I think I understand what the Court is alluding to with respect to the meaning of it. I think that has to be the removal of copyright management information. But also I would note the plaintiffs in this case never came forward and provided a specific photograph and said, here's what it was at the time of upload, here's the data that would allow you to take it out of your system, take it out. When we have received DMCA notices requesting takedown of particular photographs, and the evidence of record is that has happened only a very small number of times, we've complied and there's no argument that we haven't. You want to briefly talk about why the without authority doesn't have the burden on you with regard to two and three? The answer to that is that the plaintiffs made the affirmative argument in their motion. Right. The plaintiffs made the affirmative argument in their motion to strike our affirmative defense of express and implied license. And in making... Oh, that was at the instigation. I understand that. But leaving aside this, it's a judicial struggle. It is a judicial... What about as a statutory interpretation matter? As a statutory interpretation matter, because that language without authority of the copyright owner appears as an express requirement in the statute, and in other statutory... I'm sorry? It's in... It's elsewhere. Not in copyright. Go ahead. In copyright... But it is in the patent statute. So it is, but we don't need to get to the patent statute, because in the copyright statutes we have examples of statutes where that language does not appear as in 1201, and it is an affirmative defense, and where it does appear as in 1202, and therefore is part of plaintiff's affirmative burden. But it doesn't appear as to 1203, does it, the distribution? Well, with respect to distribution, yes, because the preamble is that no person shall, without authority of the copyright owner or the law, one, intentionally remove, two, distribute, knowing the copyright management information has been removed, without authority, three, similar provision to two. So the fact that the removal must have taken place without the authority of the copyright owner is present in each of the statutory sections. The additional requirement that CoreLogic know that that removal took place without the authority of the copyright owner is additionally present in two and three. One has the requirement that CoreLogic actually have performed the act of removal itself and did so intentionally. And then, of course, we have the additional knowledge-based arguments at the end. And I would simply note that these state-of-mind requirements with respect to knowing that the CMI has been removed without the authority of the copyright holder and knowing that it will induce, enable, facilitate, or conceal an act of infringement is precisely why this statute does not apply to CoreLogic as a provider of software that can be used for photographs that may or may not have metadata, where those permissions may or may not have been obtained, but applies, if anyone, to the real estate agents who are making those choices with respect to particular photographs and getting permissions from the photographers who are giving specific permissions for these photographs to be uploaded to MLSs using CoreLogic software. It seems more obvious with regard to one and two and three, or more arguable that CoreLogic didn't intentionally remove, but it did distribute, right? That's the action with regard to two and three. So I think with two, it is correct that the action is distributing. I think it is a question with respect to two and three because there the agent is the one making the decision to upload the particular photograph. CoreLogic doesn't have control over that. It's just licensing this data set from the MLS and then turning around and using that entire set of data. But even if the court concludes that the analysis is different for two and three, there is this additional requirement that CoreLogic know that copyright management information was removed without the authority of the copyright holder, and I would suggest there's simply no evidence in the record that CoreLogic had a basis to disbelieve the representations that were being given to it, that in fact those permissions had been secured, and I would say no basis to believe that those representations were false, at least under a theory of implied license, given the purpose for which the photographs were taken. Thank you very much. Thank you, Your Honor. Thank you, Your Honor. First I want to say that there are no written agreements or even oral agreements that even refer to copyright management information. No statements even referring to it. So CoreLogic can't rely on any type of express agreement that it can remove CMI, and if it's never even referred to, how can it imply one, particularly when it's never even spoken to plaintiffs? I think the last thing I want to say in the last 30 seconds is this, is so much of this statute has to do with the mental state of CoreLogic. Did it intentionally do something? Did it know? Did it have reason to know? And perhaps that's the way to address your concern about the phrase knowing or having reason to know that it would induce, enable, facilitate, or conceal an infringement. Maybe not so much that it actually did those things, but that CoreLogic, in its mind, thought that it would or that it could, and that's a jury question. CoreLogic doesn't have a mind. What evidence do you have that they knew it? That's the issue. Well, that's the case that we cite, the ProPET case in the opening, where that exact issue came up at trial, and the court went through a number of factors after the jury found that the defendant knew or had reason to know and went to different things. Had reason to know what? Know, again, it's the induce, enable, facilitate, or conceal. In what case is this? That's the ProPET case. There's two different ProPET cases, but that particular ProPET case is, I'll give you the page of the opening. That's the opening, and it pages 46 and 47. And so they go through a number of factors that the jury considered, or the court said the jury, based on these facts, could find that the defendant either knew or had reason to know, induce, enable, facilitate, or conceal. What facts did you have in this record that permit that inference? I was trying to ask, and I didn't ask it very clearly. I'm sorry. That's on page 47 of the opening. We have the exact same facts as ProPET. So like ProPET, CoreLogic has awareness of issues of copyright. That's number one. Like ProPET, CoreLogic routinely hired specialized legal counsel in intellectual property matters. Even stronger than ProPET, this is on page 47, CoreLogic has sales over $5 billion. So it's even stronger than ProPET because also CoreLogic has in-house counsel who manages CoreLogic's copyright portfolio and all IP litigation and IP due diligence. So we have an extremely sophisticated defendant here, much more sophisticated than what we had in ProPET, where the jury did find those mental states, and then the judge, after considering that specific evidence. So you think it's sufficient to get a jury issue to show that there's a big, knowledgeable, rich defendant? I mean, that's what those factors amount to, well-heeled defendant. And that puts you to the jury? No, it's more than well-heeled. It's understanding copyright law and copyright risks and CMI metadata. And remember, this is a case where they waive the affirmative defense about not knowing what the law was. Okay, thank you very much. Thank you both for your argument. Thank you. The case of Stevens v. CoreLogic is submitted, and we are in recess. Thank you. Thank you.
judges: Tashima, Berzon, Payne